UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**GERALD WADE MOUTON ET AL**        **CASE NO. 2:25-CV-01316**

**VERSUS**        **JUDGE JAMES D. CAIN, JR.**

**G O A CAMERON PROPERTIES L L C ET AL**        **MAGISTRATE JUDGE LEBLANC**

### MEMORANDUM RULING

Before the Court is "Defendants' Rule 12(B)(6) Motion to Dismiss for Failure to States a Claim for Which Relief can be Granted," (Doc. 12) which the Court converted to a Motion for Summary Judgment"[1] and Plaintiff's "Cross-Motion for Partial Summary Judgment" (Doc. 20).

### BACKGROUND

The instant lawsuit involves an alleged breach of an Agreement to Purchase or Sell (Commercial Property) (the "Agreement"). Plaintiffs allege that Defendants failed to complete the sale, despite Plaintiffs fully complying with all obligations in the Agreement.

Lillian Mae Theriot Mouton and Earl T. Mouton, Sr. had six children, namely, Gerald Wade Mouton, Yvonne Francene Mouton, Valian Joseph Mouton, Earl Thomas Mouton, Jr., Teresa Ann Mouton and Johnny Clyde Mouton. At the time of the sale, both Lillian and Earl had predeceased their children.

---

[1] See Doc. 19.

On May 9, 2025, Defendant Bay LA Cameron, LLC ("Bay Cameron") made an offer (the "Agreement") to purchase 35 acres of immovable property from the Estate of Earl J. Mouton, **Jr**. (the "Estate"); the closing was to occur on June 23, 2025.[2] Valian J. Mouton, accepted the offer on behalf of the Estate and the individual Plaintiffs.[3] On May 25, 2025, Bay Cameron and Valian Mouton executed an Addendum changing the seller's name to the Estate of Earl T. Mouton, **Sr. (**as opposed to Jr.),[4] and providing a legal description of the property being sold.

On July 1, 2025, a second Addendum to Agreement to Purchase or Sell (Commercial Property) (the "July 1, 2025 Addendum") was executed by Bay Cameron and GOA Cameron Properties, LLC ("GOA"), which extended the closing date to July 14, 2025, and changed the purchaser from Bay Cameron to GOA.[5] This particular Addendum was not signed by Valian, or any of the individual Plaintiffs.

On August 10, 2021, a Judgment of Possession was entered into the Succession of Lillian Mae Theriot Mouton,[6] which indicated that Earl T. Mouton, Sr. acquired a 50% interest in the subject property due to his community property interest. Earl Mouton, Sr. died on December 18, 2018. The Succession of Earl J. Mouton, Sr. was opened in the 38th Judicial District Court for Cameron Parish.[7]

---

[2] Doc. 1-1, pp. 8-15 and 25-32.
[3] *Id.*
[4] Changing the Estate name from "Jr." to "Sr."
[5] Defendants' exhibit A.
[6] Defendants' exhibit B.
[7] Plaintiffs' exhibit 1, Docket No 58,984 "D."

Plaintiffs, Gerald Wade Mouton, Yvonne Francene Mouton, Valian Joseph Mouton, Teresa Ann Mouton, Alicia Nicole Mouton, Jonnathun Michael Mouton and Lottie Reighann Mouton Bellon, move to enforce the right to specific performance of the Agreement to Purchase or Sell (Commercial Property), and order Defendants to tender the sum of $2,100,000.00 to them in payment for the subject property. Additionally, Plaintiff, Ingle Safari Companies, LLC d/b/a Coldwell Banker Ingle Safari Realty ("Ingle Safari") moves for judgment in its favor for $63,000.00 representing its brokerage fees.

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is

merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## LAW AND ANALYSIS

Plaintiffs are the children and grandchildren of Lillian Mae Theriot Mouton and Earl Thomas Mouton, Sr. They assert that the Defendants have breached the Agreement to purchase the subject property. Defendants maintain that the Estate of Earl Mouton, Sr., was not the 100% owner of the property when the Agreement was executed. As such, Defendants argue that the Estate of Earl Mouton, Sr. was not authorized to sell the property to Defendants.

Defendants also argue that because Plaintiffs were not the parties to the Agreement, they have no right to enforce it against the Defendants. Defendants also maintain that the Estate of Earl Mouton, Sr. never had full ownership of the subject property and therefore did not have merchantable title to it. Finally, Defendants contend that Defendant, Bay Cameron was no longer a party to the Agreement due to the second Addendum. Defendants

move to have this lawsuit dismissed with prejudice, and in addition, Bay Cameron moves to be dismissed from the lawsuit.

Plaintiffs maintain that Plaintiff, Valian Mouton, as the Executor of the Estate of Earl Mouton, Sr. had the authority to sign all documents on behalf of all Mouton Family Plaintiffs—Plaintiffs in this lawsuit. Plaintiffs also contend that the Agreement allowed for curative title work to be performed to present merchantable title at the closing.[8] To that end, the Judgment of Possession in the Succession of Earl Thomas Mouton, Sr. was signed on July 3, 2025, completing the required curative title work.[9]

Pursuant to the terms of the Agreement, Plaintiffs seek specific performance and/or damages, as well as costs and expenses, including reasonable attorneys' fees. Plaintiffs assert that those damages include the purchase price of $2,100,000.00, the 3% broker fee of $63,000, damages in the amount of $11,744.74 for curative title work, and reasonable attorney fees.

*Plaintiff's breach of contract claim*

To prevail on a breach of contract claim, the plaintiff must prove by a preponderance of the evidence (1) the defendant owed him an obligation; (2) the defendant failed to perform the obligation; and (3) defendant's failure to perform resulted in damage to the plaintiff. *Stipp v. Metlife Auto and Home Insurance Agency, Inc.*, 225 So.3d 1183, 1189 (La. App. 5th Cir. 08/30/2017).

---

[8] Plaintiff's exhibit A, ¶ ¶ 6 and 11, att. Original and First Supplemental and Amending Petitions, p. 17, doc. 1-1.
[9] Plaintiff's exhibit 1, att. Plaintiffs' Cross-MSJ.

Defendants argue that Plaintiffs were not parties to the Agreement and therefore cannot enforce it. Instead, the Agreement was signed by Valian Mouton, as the Executor for the Estate of Earl Mouton, Sr. As such, Defendants contend that these individual Plaintiffs who were not parties to the Agreement cannot enforce it. Additionally, Defendants argue that Plaintiff Ingle Safari was not a party to the Agreement and thus cannot enforce it. Defendants rely on a litany of cases that have held that no action of contract may lie in the absence of privity of contract between the parties. The facts concerning those cases as noted below are easily distinguishable.

"'Under Louisiana law, no action for breach of contract may lie in the absence of privity of contract between the parties.'" *Howard v. First United Pentecostal Church of DeRidder La*, 21-03181, 2022 WL 194380, at *2 (W.D. La. 1/20/22) In this case, the Court found that the plaintiff could not hold a defendant liable for an unpaid invoice. Specifically the court held that an alleged contract arose from an assumption of obligations under a written contract by two other parties. The absence of a writing was fatal to the Plaintiff's claim.

"No action for breach of contract may lie in the absence of privity of contract between the parties." *Allday v. Newpark Square I Off. Condo. Ass'n, Inc*., 20-358 (La.App. 5 Cir. 8/18/21), 327 So. 3d 566, 574 (affirming summary judgment on contract claim brought by entity which did not have a written contract with the homeowner's association). In *Allday,* the entity referred to was a tenant/lessee of a condominium unit. The tenant was attempting to collect from the condominium association and its insurer for failing to repair the condominium complex and the insurer's alleged arbitrary and capricious failure to pay

the insured's claims. The entity was a lessee not a member of the homeowner's association, nor was it an insured.

In *B-G & G Invs. VI, L.L.C. v. Thibaut HG Corp.*, 985 So. 2d 837, 841-42 (La.App. 4 Cir. 5/21/08), the court held that individual defendants who were corporate officers not in privity of contract with plaintiff could not be held liable. In this case, the buyer in the purchase agreement failed to assign his rights to a limited liability company he intended to form after the purchase agreement was executed. Thus, the limited liability company that was subsequently formed had no legal right to assert any claim relating to the seller's failure to fulfill its obligations under the purchase agreement.

On August 10, 2001, after the death of Lillian Mae Theriot Mouton, Earl T. Mouton Sr. was placed in possession of his one-half community property interest of the property and in that same Judgment of Possession, Mr. and Mrs. Mouton's six (6) children,[10] as heirs, were placed in possession with naked ownership of the remaining one-half property interest of the subject property.[11] Earl T. Mouton, Sr. passed away on December 13, 2018. Valian Mouton was the Executor of Mr. Mouton, Sr.'s estate. On July 3, 2025, a Judgment of Possession placed two of Mr. and Mrs. Mouton's children, Valian Mouton and Yvonne Mouton, in possession of Earl T. Mouton, Sr.'s interest in the subject property.

Plaintiffs assert that the children and grandchildren holding an interest in the subject property agreed to allow Valian Mouton to represent them all (referred to as the "Mouton Family Plaintiffs") with regard to the Agreement to Purchase or Sell (Commercial

---

[10] Plaintiffs in this lawsuit include those children who are surviving, and the children of the two deceased children of Lillian Mouton and Earl T. Mouton, Sr.
[11] Defendant's exhibit B, Doc. 12-3.

Property).  The Mouton Family Plaintiffs have submitted summary judgment evidence in the form of text messages from each of the Mouton Family Plaintiffs that purport to give Valian Mouton authority to sign the Agreement and negotiate the sale of the subject property on behalf of each family member.[12]

Defendants argue that the Estate of Earl T. Mouton, Sr. did not have full ownership of the subject property, and because the Mouton Family Plaintiffs were not parties to the Agreement and the July 1, 2025 Addendum, they have no right to enforce it. Additionally, Defendants argue that because the Estate of Earl T. Mouton, Sr. only owned 50% of the subject property, the Plaintiffs did not hold merchantable title to the property at the time the Agreement was executed. The Court disagrees with Defendants.

The Agreement to Purchase or Sell (Commercial Property) was signed by Valian Mouton, in his capacity as Executor of the "Estate of Earl J. Mouton, Jr. by Valian J. Mouton, Jr."[13] It was subsequently changed to the "Estate of Earl T. Mouton, Sr."[14] On July 3, 2025, a Judgment of Possession in the Estate of Earl T. Mouton, Sr. transferred ownership and possession to Plaintiffs, Valian Mouton and Yvonne Francene Mouton as to Mr. Mouton, Sr.'s 50% ownership of the subject property.[15]

Plaintiffs have submitted the Judgment of Possession of the Estate of Earl T. Mouton, Sr. that transferred Earl Mouton, Sr.'s ownership interest in the property to Valian Mouton and Francene Mouton.  Valian Mouton has since been discharged as the Executor

---

[12] Plaintiff's exhibit 10, Doc. 20-11.
[13] The Agreement was subsequently changed to identify the Estate as that of "Earl T. Mouton, Sr." Plaintiff's exhibit B, p. 33, Doc. 1-1.
[14] *Id.*
[15] Plaintiffs' exhibit 1, Doc. 20-2.

of the Succession.[16] Plaintiffs cured the title within 14 days, signed the Cash Deed, and fulfilled their obligations under the Agreement to Purchase or Sell (Commercial Property) prior to the closing. However, Defendants failed to show up for the closing.

A contract to sell must set forth the thing and the price, and meet the formal requirements of the sale it contemplates. La. C.C. art. 2623. A sale or promise of sale of an immovable must be made by authentic act or by act under private signature, except as provided in Article 1839, La. C.C. art. 2440. A sale is a contract whereby a person transfers ownership of a thing to another for a price in money. La. C.C. art. 2439. The thing, the price, and the consent of the parties are requirements for the perfection of a sale. *Id.*

An option to purchase an immovable must be evidenced in writing. La. C.C. art 2440. A contract to purchase and sell real estate is not valid unless given in writing and an extension of the time stipulated for passage of title to property in a written contract to purchase and sell real estate must also be in writing. *Harrell v. Stumberg,* 220 La. 811, 57 So.2d 692, 694. In accordance therewith, it is well settled that parol evidence may not be used to establish title to immovables. *Blevins v. Manufacturers Record Pub. Co.*, 235 La. 708, 105 So.2d 392, 414 (La. 1957) (citations omitted).

Thus, when the use of parol evidence is not for the purpose of establishing title to immovables,[2] parol evidence may be admitted in the interest of justice to prove a modification of a written act by a subsequent and valid oral agreement. La. C.C. art. 1848. *Mooers v. Sosa*, 798 So.2d 200, 206 (La. App. 5th Cir. 9/25/01) (citations omitted).

---

[16] Plaintiffs' exhibit 1, ¶ II.

Page 9 of 15

Although parol evidence is inadmissible to vary the terms of a written contract, when the terms of a written contract are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity and to show the intention of the parties. *McCarroll v. McCarroll*, 701 So.2d 1280, 1286 (La. 1997) (citation omitted). If the terms of a written contract involving real estate are ambiguous or if the intent of the parties is an issue, parol evidence can be used to enforce the terms of such an agreement rather than invalidate or destroy the contract. *Drachenberg v. Parish of Jefferson*, 563 So.2d 523, 525 (La. App. 5th Cir. 1990) (citation omitted; internal quotations omitted).

Here, the Mouton Family Plaintiffs are not relying on parol evidence to establish title but are relying on it to prove intent—that when Valian signed the Agreement to Purchase or Sell (Commercial Property), the Mouton Family Plaintiffs intended to sell the subject property to the Defendants for a purchase price of $2.1 million.

Plaintiffs have submitted summary judgment evidence that both the buyers and the sellers intended to enter into an Agreement to Purchase or Sell (Commercial Property).[17] Plaintiffs have also submitted evidence that Ingle Safari, through its agent, Amy Britt, served as Defendants' broker for the sale of the subject property.[18] Plaintiffs also submit a "Cash Deed" prepared on behalf of Defendants, "**GOA CAMERON PROPERTIES, LLC**... A Texas limited liability company, registered and authorized to do business in the

---

[17] Plaintiffs' exhibit A, att. Doc. 1-1, Plaintiff's Original and First Supplemental and Amending Petition.
[18] Doc. 1-1, p. 17 of Agreement ot Purchase/Sell (Commercial Property) and Doc. 1-1, p. 26 of First Supplemental and Amending Petition, ¶ 5.A.

State of Louisiana, . . . represented by **BAY LA ENTERPRISES, LLC, Manager of GOA CAMERON PROPERTIES, LLC,** through Michael Leslie Peek, its President, as per attached Authority."[19]

Plaintiffs also submits the affidavits of Gerald Mouton, Yvonne Mouton, Valian Mouton, Teresa Mouton, Alicia Mouton, Jonnathun Mouton, and Lottie Mouton, who all attest that they authorized, Valian Mouton to act on their behalf to negotiate the sale of the subject property.[20] The Plaintiffs also attest that the reason they chose to have one family member, namely, Valian, represent them in this particular sale was because the Mouton Family Plaintiffs had previously sold a smaller tract of land to Defendant, BAY LA CAMERON, LLC. However, because some Mouton Family Plaintiffs lived out of state and one was a "busy doctor," they experienced delays in obtaining signatures. Thus, to expedite matters concerning the sale, each Mouton Family Plaintiff sent a text message to Yvonne Mouton authorizing Valian Mouton to sign on their behalf any documents to be executed prior to the sale of this property.[21] The Plaintiffs further attest that they all agreed to the closing date being extended to July 14, 2025. The Mouton Family Plaintiffs attest that Defendants' counsel, Jamie Gary, prepared the Cash Deed, which all of the Mouton Family Plaintiffs signed.[22]

Additionally, Plaintiffs submit the Affidavit of Amy Britt of Ingle Safari, who attests that she was the broker for GOA for the first purchase of land from the Mouton

---

[19] Plaintiffs' exhibit 9, Doc. 20-10.
[20] Plaintiffs' exhibits 2,3,4,5,6,7, and 8.
[21] Plaintiffs' exhibit 11.
[22] Plaintiffs' exhibits 2,3,4,5,6,7, and 8.

Family Plaintiffs.[23] Ms. Britt attests that she communicated extensively with GOA's counsel, and due to the amount of time it required to obtain all of the Mouton Family Plaintiffs' signatures when negotiations of the subject property were conducted, the Mouton Family Plaintiffs "were requested to designate Valian Joseph Mouton as the party authorized to negotiate on behalf of all the heirs and to sign preliminary documents, such as the Agreement to Purchase or Sell and the Addendums thereto, on behalf of all the heirs."[24] Ms. Britt further attests that counsel for GOA was aware that Valian would be signing for all family members who had an ownership interest in the property.[25]

Additionally, Ms. Britt attests that all parties were aware of the curative title work, and all agreed to the extension to July 14, 2025, for the closing date.[26] Ms. Britt confirms in her Affidavit, that the Mouton Family Plaintiffs completed all of their obligations pursuant to the Agreement to Purchase or Sell and the Addendums thereto.[27] Ms. Britt also attests that none of the documents involving the sale were drafted by the Mouton Family Plaintiffs.[28]

Finally, Ms. Britt attests that the Agreement contains a provision that "Coldwell Banker Ingle Safari Realty was owed the sum of $63,000.00 [3% of the purchase price] upon the Defendants' refusal to execute the CASH DEED."[29]

---

[23] Plaintiffs' exhibit 11, ¶ D.
[24] *Id.* ¶ D.
[25] *Id.*
[26] *Id.* ¶ E.
[27] *Id.* ¶ G.
[28] *Id.* ¶ H.
[29] *Id.* ¶ I.

The Court finds that there is no dispute that the Defendants, Cameron Bay, on behalf of GOA entered into an Agreement to Purchase or Sell the subject property, and that Defendants were aware of the ownership of the property, and that curative title work had to be completed. Defendants have presented no summary judgment evidence to dispute that the parties' intent, which included all of the Mouton Family Plaintiffs, was to sell the subject property to Cameron Bay on behalf of GOA. Defendants breached their obligations under the contract and Plaintiffs are entitled to specific performance, including Ingle Safari, as a beneficiary to the Agreement.

The Court finds that Defendant's Motion to Dismiss based on Plaintiffs being non-parties is without merit and will be denied. The Court further finds that there is no genuine issue of material fact for trial, and that Defendants breached their obligation to complete the sale. Therefore, Plaintiffs are entitled to specific performance as a matter of law.

*Dismissal of Bay LA Cameron, LLC*

Bay Cameron also moves to be dismissed from this lawsuit because the July 1, 2025 Addendum changed the parties to the Agreement from Bay LA Cameron, LLC to GOA Cameron Properties, LLC; it also changed the closing date to July 14, 2025.[30] Here, as noted above, Plaintiffs appear to agree that the July 1, 2025 Addendum changed the closing date from June 23, 2025, to July 14, 2025, but they suggest it did not change the name of the Seller to the contract. Additionally, the Agreement expressly granted the Seller an extension to provide curative title work. The July 1, 2025 Addendum is not signed by

---

[30] Defendant's exhibit A.

Valian Mouton and Defendants have submitted no summary judgment evidence to establish that Plaintiffs were aware of and/or agreed to remove Bay Cameron as a party to the Agreement. Accordingly, Defendants Motion to Dismiss Bay Cameron will be denied.

*Merchantable title*

Defendants argue that because Earl Mouton, Sr. did not hold 100% ownership of the property when the Agreement was executed, the seller could not provide merchantable title. Plaintiffs note that the Agreement allowed the parties to provide curative tile work, which the Plaintiffs successfully completed. The July 3, 2025, Judgment of Possession transferred one-half ownership of the property to the heirs of the Estate of Earl Mouton, Sr. (Valian and Yvonne) and earlier Judgment of Possession of the Estate of Lillian Mae Theriot Mouton transferred one-half ownership to the children and grandchildren.

The Agreement to Purchase or Sell allows the Seller to cure any defects in the title.

> 11. SELLER'S TITLE: SELLER'S title shall be merchantable and free of all liens, encumbrances, and defects, except those that can be satisfied at the Act of Sale or insured by title insurance. If curative work in connection with the title is required, the parties agree to extend the time for closing the sale by 14 days. SELLER(s) shall pay all costs required to make the title merchantable, including all necessary tax and mortgage releases, certificates, and cancellation, if any. In the event the title is not valid or merchantable, this Agreement may be declared null and void at the option of the PURCHASER(s).[31]

The summary judgment evidence shows that as of the closing, the Seller provided merchantable title as required. As such, Defendant's motion to dismiss based on failure to provide merchantable title is without merit and will be denied.

---

[31] ¶ 11, Agreement to Purchase or Sell (/commercial Property), Doc. 1-1, pp. 11, 28-36.

## **CONCLUSION**

For the reasons explained herein, the Court will deny Defendants' Rule 12(B)(6) Motion to Dismiss for Failure to States a Claim for Which Relief can be Granted, (Doc. 12) which the Court converted to a Motion for Summary Judgment and will grant Plaintiff's Cross-Motion for Partial Summary Judgment (Doc. 20).

**THUS DONE AND SIGNED** in chambers on this 13th day of February, 2026.

*[signature]*
JAMES D. CAIN, JR.
**UNITED STATES DISTRICT JUDGE**